UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____
                                                    )
DIAMOND BROCK                       )
                                                    )
                    Plaintiff,              )
                                                    )          Civil Action No.:
        v.                                       )          _____
                                                    )
COLLEGIATE HOTEL GROUP, LLC   )          **JURY TRIAL**
D/B/A GRADUATE HOTELS         )          **DEMANDED**
MANAGEMENT                          )
                                                    )
                    Defendant.           )
_____)

## COMPLAINT AND JURY DEMAND

### PARTIES

1.      The Plaintiff, Diamond Brock ("Ms. Brock" or the "Plaintiff"), is a female

resident of the state of Connecticut, residing at 361 Circular Ave, Hamden, Connecticut, 06514.

Hamden is in New Haven County.

2.      Defendant Collegiate Hotel Group, LLC d/b/a Graduate Hotels Management  (the

"Company" or the "Defendant") is a domestic for-profit corporation doing business in the state

of Connecticut.  The Company is incorporated in Connecticut and its principal office is located at

2000 High Wickham Place, Suite 300, Lousiville, KY 40245.  During all relevant times, the

Company operated a facility in Connecticut located at 1151 Chapel Street A, New Haven, CT

06511.

### JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§1331 because Plaintiff has brought a claim pursuant to Title VII and the ADA. The court may

exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

4.      This court has personal jurisdiction over the Company because the Company is a resident of Connecticut, including because it is incorporated in Connecticut.

5.      In addition, this Court has personal jurisdiction over the Company because the Company has engaged in and transacted business in the State of Connecticut, including by managing and/or operating a business in Connecticut and/or employing the Plaintiff in Connecticut, and Plaintiff's causes of action stem largely from Company's business transactions within the State of Connecticut.  Indeed, the Plaintiff was employed by the Company in the State of Connecticut, was managed and supervised by Company in the State of Connecticut, was discriminated against and harassed by the Company in the State of Connecticut, and was terminated by the Company in the State of Connecticut.

## STATEMENT OF FACTS

6.      On or around May 19, 2021, Ms. Brock was hired as a guest services representative by the Company in New Haven, CT.

7.      At all relevant times, the Company employed 15 or more employees for 20 or more calendar weeks during the preceding 12 months making the Company a covered employer under the Americans with Disabilities Act ("ADA"), 42 USC s. 2000e et seq. ("Title VII"),  and relevant state law, including the Connecticut Fair Employment Practices Act ("CFEPA").

8.      At all relevant times, Ms. Brock was a qualified employee, and her job performance was satisfactory.

9.      During her employment, Ms. Brock was supervised by housekeeping manager Daniel Willis ("Willis").

10.     Shortly after she was hired, Ms. Brock revealed to Willis and the Company's Human Resources representative Jill Leitch ("Leitch"), that she was four weeks pregnant.

11.     When she revealed her pregnancy, Ms. Brock also inquired about accommodations for her pregnancy from Leitch and Willis, including whether she could take leave associated with the labor and act of giving birth to her child.

12.     Leitch and Willis seemed dismissive, but told Ms. Brock not to worry about taking leave related to giving birth to her child.

13.     On or around May 25, 2021, Ms. Brock emailed Leitch to note she had scheduled a pregnancy-related appointment for May 26, 2021 and would be able to come to work right after.  In this email, Ms. Brock also made it clear she might need further pregnancy-related accommodations in the near future.

14.     On or around June 1, 2021, as a result of her pregnancy, Ms. Brock began to feel dizzy and nauseous, to the point where she could not walk or drive.

15.     As it was not safe for her to drive, Ms. Brock contacted Leitch, disclosed that she was experiencing severe, pregnancy-related symptoms, including nausea and dizziness, and asked for the reasonable accommodation of taking the day off to treat her pregnancy-related symptoms.

16.     Leitch texted Ms. Brock, stating, "sure, come in at 9:30AM."

17.     Ms. Brock's pregnancy-related symptoms did not improve throughout the day and, as such, at or around midnight, Ms. Brock checked herself into the hospital.

18.     In light of this and Ms. Brock's continuing (and worsening) pregnancy-related symptoms, Ms. Brock texted Leitch at 1:29 AM and explained her pregnancy-related symptoms were continuing so she was admitted to the hospital.

19.     Ms. Brock made it clear to Leitch that she was requesting the reasonable accommodation of a further day of medical leave to treat her pregnancy-related symptoms.

20.     Leitch approved this reasonable accommodation.  Indeed, Leitch responded stating, "Hi Diamond, I hope you feel better! Keep us posted."

21.     There was no indication from Leitch that Ms. Brock's requested accommodation had been denied or that Ms. Brock was expected to show up to work that morning.

22.     Notably, the Company's policy requires an employee to notify their manager approximately two hours before their shift if they are unable to attend.  As Ms. Brock's shift was at 9:30am, Ms. Brock notified the Company approximately eight hours before her shift was scheduled to begin.  Ms. Brock thus fully complied with Company policies.

23.     While Ms. Brock was in the hospital, she was diagnosed with pregnancy-related gastroesophageal reflux disease ("GERD") and esophagitis.

24.     Ms. Brock's pregnancy-related GERD and esophagitis are (both individually and collectively) physical impairments that substantially limit one or more of her major life activities, including, but not limited to, eating, digesting, walking, and driving, especially during flare-ups. Ms. Brock's gastroesophageal reflux disease ("GERD") and esophagitis are further impairments that further substantially limit the operation of one or more of Ms. Brock's major bodily functions, including, but not limited to, her digestive functions. As such, she is disabled under federal and Connecticut law.

25.     When Ms. Brock was diagnosed with pregnancy-related GERD and esophagitis, she called Leitch and revealed her disabilities to her.  During this conversation, Ms. Brock explained these symptoms could continue flaring up throughout her pregnancy and, as such, Ms. Brock would likely need additional protected leave in the future.

26.     As such, Ms. Brock made it clear to Leitch she needed the reasonable accommodation of intermittent leave during her pregnancy due to her pregnancy and/or pregnancy-related disabilities.

27.     At or around 5:30pm that day (i.e., June 2, 2021), Ms. Brock informed Leitch that her symptoms were improving and she believed she would be at work the next day at her usual shift start time of 9:30AM.

28.     Ms. Brock returned to work on June 3, 2019 and worked her schedule with no further issues until June 9, 2021.

29.     On or around June 9, 2021, Ms. Brock had another flare-up of her pregnancy-related GERD and esophagitis disabilities. Importantly, this flare-up was so severe that she was unable to stand for a time after lunch.

30.     In light of this, Ms. Brock again texted Leitch and disclosed the flare-up of her pregnancy-related disability symptoms and requested the reasonable accommodation of leaving work early.

31.     Importantly, Leitch seemingly granted the accommodation, stating, "Just clock out or I can clock you out, don't worry about your hours.  I hope you feel better!"

32.     That same day, as soon as she was able, Ms. Brock went to Willis, revealed her pregnancy-related disabilities and noted that Leitch had previously approved the reasonable accommodation of her being able to take periodic time off during symptom flare-ups and had approved this specific request for time off.

33.     Ms. Brock reiterated to Willis her request for the reasonable accommodation of being allowed to leave work early that day so that she could receive treatment for this flare-up.

34.    Willis approved this reasonable accommodation and based on the seeming approval of Willis and Leitch, Ms. Brock left work due to the severity of the flare-up of her pregnancy-related disability.

35.    On or around June 13, 2021, Ms. Brock again began suffering from a flare-up of her pregnancy-related disability.  In light of this, Ms. Brock texted Willis and requested the reasonable accommodation being allowed to take the day off from work due to the flare-up of her pregnancy related disability.

36.    Notably, Willis did not respond to Ms. Brock's text message.  In light of this, approximately an hour later, Ms. Brock conveyed the same information to Leitch and requested the same accommodation.

37.    In response, Leitch then told Ms. Brock she needed to call out and/or inform Willis of her requested accommodation.  Notably, Ms. Brock had already informed Willis of her requested accommodation and her need to call out and, thus, she had already complied with Leitch's instructions.

38.    On or around June 22, 2021, when she came into work, Ms. Brock was pulled aside by Leitch and Willis and was issued a verbal warning for attendance.

39.    This attendance warning was clearly being issued because of the time off of work that Ms. Brock had utilized as an approved accommodation associated with her pregnancy-related disabilities.

40.    Indeed, upon information and belief, the only time Ms. Brock had taken off at this point had been due to her pregnancy and/or her pregnancy-related disability.

41.     Ms. Brock was shocked, as Leitch and Willis had seemingly approved her time off from work and the only time she had taken off from work was due to flare-ups of her disabilities and pregnancy.

42.     As such, Ms. Brock raised protected concerns to Leitch and Willis that by issuing her this verbal warning, they were discriminating against her based on her disabilities and pregnancy, retaliating against her for using accommodations related to these conditions, and seemingly improperly revoking her previously granted reasonable accommodations.

43.     Leitch and Willis dismissed Ms. Brock's protected concerns and told her that her time off for her disabilities and pregnancy was putting her position in jeopardy.

44.     Fearing retaliation if she were to raise further protected concerns, Ms. Brock felt like she was no longer able to raise protected complaints and finished the meeting with Leitch and Willis without engaging in further protected activity.

45.     Following this clear act of retaliation, Ms. Brock felt as though she had no choice but to try to work through symptom flare-ups rather than request further reasonable accommodations.

46.     On or around June 24, 2021, on a visit to her OB/GYN after work hours, Ms. Brock was informed that she needed to ask for time off from work if she were to experience symptoms of her pregnancy-related GERD and esophagitis, as the severity of her condition was endangering her vital organs and her pregnancy.

47.     As such, the next day, on or around June 25, 2021, Ms. Brock went to Willis and again reiterated that she needed the reasonable accommodation of intermittent time off from work without being reprimanded when she experienced flare-ups of her pregnancy-related disabilities.

48.     Willis looked at her in a derisive manner, but ultimately approved her reasonable accommodation.

49.     On or around June 29, 2021, Ms. Brock had a severe flare-up of her pregnancy-related disabilities, including blurry vision, dizziness, and weakness.

50.     As such, Ms. Brock emailed the Company and explained she was having a flareup of her pregnancy-related disability symptoms and would not be able to attend work that morning. In light of the flare-up of her pregnancy-related disabilities, Ms. Brock asked for the reasonable accommodation of a protected leave of absence for that day.

51.     Importantly, Ms. Brock provided notice as soon as she was reasonably able to after the flare-up of her pregnancy related symptoms began.

52.     On or around June 30, 2021, the day after Ms. Brock utilized her reasonable accommodation due to her pregnancy-related disabilities, Ms. Brock was called into General Manager Dominic Ruggieri's ("Ruggieri") office, where Willis was also in attendance.

53.     When she came into the office, Ms. Brock was issued a final written warning for her attendance.

54.     Ms. Brock was stunned, as she had been approved for the reasonable accommodation of taking time off from work due to her disabilities and pregnancy, and Willis and Ruggieri knew that the time off she had taken was purely due to her disabilities and pregnancy.

55.     Indeed, to the extent Ruggieri or Willis had forgotten Ms. Brock's absences were due to her pregnancy and/or pregnancy-related disabilities, Ms. Brock reiterated in this meeting that her absences, including the absence the day before, had been due to her pregnancy and/or her pregnancy-related disabilities.

56.    As such, Ms. Brock again raised protected concerns to Ruggieri and Willis that this final written warning was seemingly being issued because she was pregnant, disabled, and/or had previously engaged in protected activity.  Indeed, this further seemingly constituted an improper and unjustified revocation of previously approved accommodations.

57.    Ruggieri and Willis ignored her protected concerns and made it clear they did not care that Ms. Brock's absences were related to her pregnancy and/or pregnancy-related disabilities and were upset by these absences.

58.    Indeed, Ruggieri implied Ms. Brock was taking advantage of the Company by requesting and/or utilizing these protected pregnancy and/or disability related accommodations. Ruggieri further made it clear Ms. Brock would be terminated if she took any further time off from work.

59.    Notably, Ruggieri's threat that Ms. Brock would be terminated if she took off any further time from work amounted to a clear denial of any reasonable accommodations and a blatant refusal to engage in an interactive dialogue.

60.    Despite their clearly discriminatory and retaliatory motivations, Ruggieri reiterated that Ms. Brock's job performance was good and he had no concerns with her job performance.

61.    Notably, in going to a final warning, the Company skipped over providing Ms. Brock with a written warning.

62.    Upon information and belief, the Company's standard practice and procedure was to provide employees with a written warning before providing employees with a final warning.

63.    On or around July 7, 2021, Ms. Brock began to have a severe flare-up of her pregnancy-related disabilities, including feeling dizzy and nauseous.  Ms. Brock wanted to take

this day off due to her pregnancy-related disability flare-up, but feared retaliation due to the threats that had been made against her.

64.     Fearing termination if she were to take time off from work, Ms. Brock drove herself into work despite the pain and discomfort.

65.     When she arrived at work, Ms. Brock was met by Ruggieri, who told her she would be training a new hire Abigail (last name unknown, "Abigail").

66.     Ms. Brock informed Ruggieri that she was not feeling well due to her pregnancy-related disabilities, but stated that she would do her best to train Abigail.

67.     However, around 11am, while Ms. Brock was training Abigail on the computer, the words on the screen became blurry and Ms. Brock began to feel faint.

68.     Ms. Brock stopped mid-sentence, and called Ruggieri.

69.     Ms. Brock explained she was in danger of fainting due to dizziness associated with her pregnancy-related disability, and asked to take a break immediately to keep from fainting due to this flare-up of her pregnancy-related disability symptoms.

70.     Ruggieri arrived shortly thereafter to provide Ms. Brock with a temporary break.

71.     Following this temporary break, Ms. Brock did her best to continue working. However, shortly thereafter, Ms. Brock's nausea reached a pinnacle and she was forced to run to the bathroom to vomit.

72.     At this point, due to her ongoing and worsening pregnancy-related disability symptoms, Ms. Brock realized that she could not continue working.  She contacted Ruggieri, recounted what had happened due to her worsening disability symptoms, and asked Ruggieri if she could have the reasonable accommodation of taking the rest of the day off.

73.    Ruggieri informed Ms. Brock that if she left now that he would count it against her attendance because it was less than halfway through her shift.

74.    Notably, it was 10:55am, approximately 5 minutes from the halfway point to Ms. Brock's shift.

75.    Despite this, Ruggieri refused to accommodate Ms. Brock's pregnancy-related disability and refused to allow her to leave, noting that she would be terminated if she left.

76.    This constituted an improper denial of Ms. Brock's requested accommodation and a blatant failure (and refusal) to engage in an interactive dialogue.

77.    Shocked, Ms. Brock asked Ruggieri if he would permit her to utilize her reasonable accommodation (i.e., leaving early when her disability related symptoms flared-up) if she were to bring a doctor's note when she returned from the temporary leave confirming that she received treatment and/or was suffering from symptoms.

78.    Ruggieri told her that her reasonable accommodation request was denied regardless of whether or not she brought a doctor's note.

79.    As such, despite Ms. Brock attempting to engage in an interactive dialogue, Ruggieri again refused.

80.    Feeling far too weak and feeble to continue working, Ms. Brock informed Ruggieri she had no choice but to clock out for the day in light of her doctor's previous warnings regarding the potential health of herself and/or her baby if she did not care for and/or seek treatment for the pregnancy-related disability symptoms.

81.    On or around July 9, 2021, when she came in for her next scheduled shift, Ms. Brock was pulled by Ruggieri into his office, where Leitch was waiting.

82.    Ruggieri and Leitch told Ms. Brock that she was terminated, allegedly for attendance.

83.    As a result, Ms. Brock was involuntarily terminated from the Company on July 9, 2021.

84.    Notably, this termination came one day after Ms. Brock's pregnancy/disability-related accommodation was denied.

85.    Importantly, in their termination paperwork for Ms. Brock, the Company explicitly noted Ms. Brock was being terminated for leaving work early on July 7, 2021 (which was necessary due to her pregnancy and/or pregnancy-related disabilities).

86.    In addition, the Company also referenced prior callouts, including June 1, 2, 13, and 29, as well as Ms. Brock leaving early on June 9.

87.    Notably, a number of these absences were due to Ms. Brock's disability and/or pregnancy, and had been requested as accommodations.

88.    The Company was aware of Ms. Brock's disability and/or pregnancy and, furthermore, was aware a number of these absences were due to Ms. Brock's disability and/or pregnancy.

89.    Indeed, Ms. Brock had previously requested the reasonable accommodation of temporary leaves of absence due to pregnancy and/or disability symptoms during these times and requested all of these days off as accommodations for her pregnancy and pregnancy-related disability.

90.    As such, it is clear the Company was explicitly terminating Ms. Brock because of her requested accommodations, her pregnancy, and/or her disabilities.

91.     The Company made no effort to engage in an interactive dialogue regarding Ms. Brock's pregnancy and/or disability-related accommodations.

92.     Upon information and belief, Ms. Brock was replaced by a non-disabled, non-pregnant employee.

93.     On or around December 1, 2021, Ms. Brock timely filed a Charge of Discrimination (the "Charge") with the Connecticut Commission on Human Rights and Opportunities (the "CHRO") and cross-filed with the Equal Employment Opportunity Commission (the "EEOC").

94.     On or around June 6, 2023, at Ms. Brock's request, the CHRO provided a release of jurisdiction allowing Ms. Brock to proceed in court.

95.     On or around June 7, 2023, at Ms. Brock's request, the EEOC provided a Right to Sue letter allowing Ms. Brock to proceed in court.

96.     This lawsuit is timely filed.

## COUNT I

### (Pregnancy Discrimination Under Conn. Gen. Stat. 46a-60)

### Plaintiff v. Defendant

97.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

98.     The Company is an employer under the definitions applicable to Conn. Gen. Stat. § 46a-60 because the Company employed three or more persons.

99.     The Company, by and through its agents, harassed and discriminated against Plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because the Plaintiff was pregnant.

100.    More specifically, the Company subjected the Plaintiff to adverse actions, including, but not limited to, a hostile and harassing work environment, unjustified and/or overly harsh discipline and reprimands, and the termination of the Plaintiff's employment because the Plaintiff was pregnant.

101.    Ms. Brock requested reasonable accommodations related to her pregnancy, including, but not limited to, temporary leaves of absence and/or intermittent protected leave.

102.    The Company denied these accommodations and/or reprimanded Ms. Brock for utilizing these accommodations. Further, the Company failed to engage in an interactive dialogue related to these requests for accommodations.

103.    Ms. Brock's requested reasonable accommodations, as set forth above, were not undue burdens on the Company.

104.    The Company's actions against Ms. Brock were willful and malicious.

105.    As a direct and proximate result of the Defendant's violations of Conn. Gen. Stat. § 46-60, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

106.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, emotional distress damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

**COUNT II**

**(Sex Discrimination Under Title VII through Pregnancy Discrimination)**

**Plaintiff v. Defendant**

107.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

108.    During all relevant periods the Company was an employer under Title VII, 42 U.S.C. §§ 2000e, et seq. (hereinafter, "Title VII") because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

109.    Title VII makes it clear that discrimination on the basis of pregnancy, childbirth, or related medical conditions is a type of unlawful sex discrimination.

110.    The Company, by and through its agents, harassed and discriminated against Plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because the Plaintiff was a woman and/or because she was pregnant.

111.    More specifically, the Company subjected the Plaintiff to adverse actions, including, but not limited to, a hostile and harassing work environment, unjustified and/or overly harsh discipline and reprimands, and the termination of the Plaintiff's employment because the Plaintiff was pregnant.

112.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Brock.

113.    As a direct and proximate result of the Company's violations of Title VII, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

114.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT III

### (Disability Discrimination Under Conn. Gen. Stat. 46a-60)

### Plaintiff v. Defendant

115.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

116.    Ms. Brock suffers (and at all relevant times suffered) from disabilities, including, gastroesophageal reflux disease ("GERD") and esophagitis.  Each of these disabilities, both individually and collectively, are impairments that substantially limit one or more of her major life activities, including, but not limited to, eating, concentrating, and driving.  Ms. Brock's gastroesophageal reflux disease ("GERD") and esophagitis are further impairments that further substantially limit the operation of one or more of Ms. Brock's major bodily functions, including, but not limited to, her digestive functions. Accordingly, Ms. Brock's GERD and esophagitis are and at all relevant times were disabilities under Connecticut law and Ms. Brock was (and is) disabled under the same.

117.    At all relevant times, Ms. Brock was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

118.    Ms. Brock disclosed her disabilities to the Defendant, and/or the Defendant was aware of Ms. Brock's disabilities, and/or the Defendant regarded Ms. Brock as disabled.

119.    Ms. Brock requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job.  These requested reasonable accommodations included, but were not limited to, having time off from work for treatment of her disabilities.

120.    The disability-related accommodations requested by Ms. Brock did not pose an undue burden on the Defendant.

121.    The Defendant failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

122.    The Defendant unlawfully denied, and/or eventually revoked, one or more of Ms. Brock's disability-related accommodation requests.

123.    The Defendant discriminated against Ms. Brock due to her disabilities by subjecting Ms. Brock to adverse actions, including, but not limited to, subjecting Ms. Brock to a hostile and harassing work environment, unjustified and/or overly harsh discipline and reprimands, and the termination of the Plaintiff's employment.

124.    Non-disabled employees of the Defendant were treated more favorably than Ms. Brock including through not being improperly harassed, criticized, and/or not being terminated.

125.    Upon information and belief, the Defendant replaced Ms. Brock with a lesser or similarly qualified, non-disabled employee.

126.    The Defendant's actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Brock and/or conduct so reckless to amount to such disregard.

127.     As a direct and proximate result of the Company's violations of Connecticut law, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

128.     The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

### COUNT IV

### (Disability Discrimination Under the ADA)

### Plaintiff v. Defendant

129.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

130.     During all relevant times, the Company was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et. seq. (hereinafter the "ADA"), because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

131.     Ms. Brock suffers (and at all relevant times suffered) from disabilities, including, gastroesophageal reflux disease ("GERD") and esophagitis.  Each of these disabilities, both individually and collectively, are impairments that substantially limit one or more of her major life activities, including, but not limited to, eating, concentrating, and driving.  Ms. Brock's gastroesophageal reflux disease ("GERD") and esophagitis are further impairments that further

substantially limit the operation of one or more of Ms. Brock's major bodily functions, including, but not limited to, her digestive functions. Accordingly, Ms. Brock's GERD and esophagitis are and at all relevant times were disabilities under Federal law and Ms. Brock was (and is) disabled under the same.

132.    At all relevant times, Ms. Brock was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

133.    Ms. Brock disclosed her disabilities to the Defendant, and/or the Defendant was aware of Ms. Brock's disabilities, and/or the Defendant regarded Ms. Brock as disabled.

134.    Ms. Brock requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job.  These requested reasonable accommodations included, but were not limited to, having time off from work for treatment of her disabilities.

135.    The disability-related accommodations requested by Ms. Brock did not pose an undue burden on the Defendant.

136.    The Defendant failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

137.    The Defendant unlawfully denied, and/or eventually revoked, one or more of Ms. Brock's disability-related accommodation requests.

138.    The Defendant discriminated against Ms. Brock due to her disabilities by subjecting Ms. Brock to adverse actions, including, but not limited to, subjecting Ms. Brock to a hostile and harassing work environment, unjustified and/or overly harsh discipline and reprimands, and the termination of the Plaintiff's employment.

139.    Non-disabled employees of the Defendant were treated more favorably than Ms. Brock including through not being improperly harassed, criticized, and/or not being terminated.

140.    Upon information and belief, the Defendant replaced Ms. Brock with a lesser or similarly qualified, non-disabled employee.

141.    The Defendant's actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Brock and/or conduct so reckless to amount to such disregard.

142.    As a direct and proximate result of the Company's violations of the ADA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

143.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT V

### (Retaliation Under Conn. Gen. Stat. 46a-60)

### Plaintiff v. Defendant

144.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

145.    The Plaintiff engaged in protected activity under Conn. Gen. Stat. § 46a-60, including, but not limited to, by requesting accommodations related to her disabilities and/or pregnancy, expressing concerns about the improper refusal of the Defendant to grant accommodations and/or engage in an interactive dialogue regarding the accommodation requests, and/or by expressing protected concerns regarding the harassing and discriminatory actions improperly undertaken by the Defendant based on the pregnancy and/or disability of the Plaintiff.

146.    The Defendant retaliated against the Plaintiff and/or discriminated against the Plaintiff for opposing one or more acts or practices made unlawful by Conn. Gen. Stat. § 46a-60, including by subjecting Ms. Brock to adverse actions, including, but not limited to, a hostile and harassing work environment, unjustified and/or overly harsh discipline and reprimands, and the termination of the Plaintiff's employment.

147.    The Defendant's actions against Ms. Brock were willful and malicious.

148.    As a direct and proximate result of the Defendant's violations of Conn. Gen. Stat. § 46-60, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

149.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT VI

### (Retaliation Under the ADA)

### Plaintiff v. Defendant

150.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

151.    The Plaintiff engaged in protected activity under the ADA, including, but not limited to, by requesting accommodations related to her disabilities and/or pregnancy, expressing concerns about the improper refusal of the Defendant to grant accommodations and/or engage in an interactive dialogue regarding the accommodation requests, and/or by expressing protected concerns regarding the harassing and discriminatory actions improperly undertaken by the Defendant based on the disabilities of the Plaintiff.

152.    The Defendant retaliated against the Plaintiff and/or discriminated against the Plaintiff for opposing one or more acts or practices made unlawful by Conn. Gen. Stat. § 46a-60, including by subjecting Ms. Brock to adverse actions, including, but not limited to, a hostile and harassing work environment, unjustified and/or overly harsh discipline and reprimands, and the termination of the Plaintiff's employment.

153.    The Defendant's actions against Ms. Brock were willful and malicious.

154.    As a direct and proximate result of the Defendant's violations of Conn. Gen. Stat. § 46-60, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

155.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

WHEREFORE, the Plaintiff, Diamond Brock, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay),

D.  Award the Plaintiff other monetary damages, including damages for her diminished earning capacity and injury to reputation;

E.  Award the Plaintiff emotional distress damages and compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

F.  Award the Plaintiff punitive damages;

G.  Award the Plaintiff her reasonable attorneys' fees;

H.  Award the Plaintiff interest and costs;

I.  Award the Plaintiff all other damages to which he is entitled; and

J.   Grant such further relief as is just and equitable.


                                        Respectfully Submitted,

                                        DIAMOND BROCK

                                        By her attorneys,

                                        THE LAW OFFICES OF WYATT &
                                        ASSOCIATES P.L.L.C


Date: July 7, 2023                 By:   */s/ Michael R. Varraso*
                                        Michael R. Varraso
                                        mvarraso@wyattlegalservices.com
                                        CT State Bar: 439521
                                        D. Conn. No.: ct307777

                                        Benjamin J. Wyatt
                                        BWyatt@Wyattlegalservices.com
                                        CT State Bar: 437487
                                        D. Conn. No.: ct29994

                                        The Law Offices of Wyatt & Associates,
                                        P.L.L.C.
                                        17 Elm Street, Suite C211
                                        Keene, NH 03431
                                        Telephone: (603) 357-1111
                                        Facsimile: (603) 685-2868